Case number 19-3171, United States of America v. David L. Fievet, oral argument not to exceed 15 minutes per side. Eric George X for the appellant, you may proceed. May it please the court, your honors, I reserve three minutes for rebuttal. Your honors, this case ultimately is a mine run case. There's a threshold question here about whether this is a heartland matter, whether it's a mine run case. And then from there, was there a significant upward variance? If the answer to both those questions is yes, then this court takes a closer look, a closer review at a sentence. So what we have here is, in our opinion, a significant upward variance of 12 months of 75%. Now I know we're not doing mechanical numbers, but essentially a close to double. And it's done in a way where the predictive model of the guidelines is that if you, let's say you steal over $40,000 from the Social Security Administration and you lie to cover it up, you should expect about a 10 to 16 month sentence. You're not going to get probation if you do these things. And that is what the guidelines came out to. Because what we have is a matter where this amount of money that was stolen was in the guidelines, and the lie to cover it up was in the guidelines because there were two points for obstruction. And if, in fact, the factors that are given as the reason for an upward variance are incorporated within the guidelines. Well, that's the question here. Explain to me why there are not some factors here that are not incorporated in the guidelines. I think that is the correct mine run analysis. Is it in the heartland? But what the court was saying was that the gambling that has gone across a lifetime, the military record, the honorable versus general discharge, are all things that are not incorporated in those guidelines. Why would those be insufficient to keep it, to move it outside the mine run case? So I think the answer to that is to the extent there is anything the government has argued outside that makes this unique, that makes it atypical. History of fraudulent conduct is an overall umbrella of perhaps what the court's getting at. But I would argue first that those type of things need to be fact driven. They cannot be based on speculation. And there were not factual findings made related to those things. I am still confused as I read this transcript whether the honorable versus under honorable conditions factored into the decision. Quite frankly, upon rereading it again last night, it appeared to me that the district court may have been referring to some bad checks that were written while he was in the military, when the military came up at the end. And to that end, we are dealing now with 25 years ago some bad checks that were not charged as a crime. In reading, I had the first initial impression that going back and looking at the record, the underlying information about the selection of discharge under honorable circumstances includes a lot more than a few checks. It includes defiance of instructions. I'm trying to remember the list. But there were several other things listed by the governing officer as to why it wasn't just a general honorable discharge, more than just bad checks, which I agree. This is a kid with his first checking account. But defiance of orders, not according with the disciplinary requirements within the military. Those are other items. How can we exclude those considerations? I don't know that we need to exclude them, but there has to be a specific discussion of how those are going to cause us to do a big variance. And if we're 25 years ago, we know criminal history generally in the guidelines, when you get that far back, often drops off. And we're talking about, in balance, what the military ultimately said was that his service was honest. Am I wrong, though? Was there not a suggestion that he had also told probation or somebody that he had been discharged honorably? That was argued by the United States, that there was a misrepresentation based on whether it was an honorable discharge. Ultimately, the district court found that that was not going to be a factor in my reading of it, that the difference between honorable and general under honorable conditions was a confusing matter for all parties involved. It may not have been something when she initially came up with the acceptance of responsibility? I can't remember. She declined a two-level increase, I think, right? Is that right? But she could still take it into consideration in thinking about whether it was a mine run case or not, right? I mean, I'm thinking about, she says this is a lamentable case or something, there's a history. I mean, it all factors into that discussion where she says, I mean, you have this history of essentially dishonest conduct. They're living outside of Cleveland when you're a Cleveland firefighter. I mean, it just all factors in, doesn't it? What I'm saying is that that ultimately, I believe the courts now summarized everything that was brought up that could be. Except that was the running a gambling house on the grounds that you were helping disabled children, but not really helping disabled children. Was that included in the guideline calculation? Or is that one of the other factors that the court was addressing? Again, when we're dealing with a requirement for a specific discussion, conspicuously I don't believe that came up at all during the sentencing hearing. Now, it did come up in the briefing, and it was addressed then in a reply by the defense that this isn't related to charity, that this was a misdemeanor gambling house offense that did not relate to him directly lying about charities. Because certainly, if there were factual findings on lying about charities, that would factor into a history of dishonesty. But I don't believe that's here. So, but running a gambling house as a misdemeanor, is that included in the guideline calculation? Or is that one other factor that this court below seemed to be upset about? I believe it is included in the guideline calculation under a criminal history. But ultimately, I believe it's criminal history. I don't believe it got to a two. In terms of the living outside of Cleveland, I think this is another example of speculation, because I couldn't find where that came from. That wasn't addressed in the briefing, and I didn't find it in the PSI. So, you know, there was a sense of being blindsided by this allegation that you live outside of Cleveland, and therefore you have an additional history of dishonesty. What ultimately, if we look at in terms of a specific discussion of why there was a variance, why the guidelines had to be manipulated, it's tied fairly directly to the icing on the cake, the obstruction. And that argument is fairly straightforward that I've made, that the obstruction is certainly within the guidelines because of the two points. So ultimately, when you have something like that, then you don't have sufficient reasons, which is a procedural question for a variance. But then you take the next step to substantive reasonableness, which now we're dealing with a word of compelling, a compelling justification. So the procedural problem is a lack of specificity, a lack of careful discussion of not just the variance, but the extent of the variance. Why do we have to not just do a few months to send a message, but an entire additional year? And then the substantive is that we don't ultimately have a compelling justification because the majority of this was within the guidelines in a mine run case. You have to look closely at whether we really have compelling reasons to manipulate guidelines and make them significantly more. And ultimately then, because of the way that went, it sidestepped to the point where we don't have any discussion then of the fact that we really do have a man who has served his country, there were maybe some issues, who has served as a public servant, as a firefighter, for 25 plus years. And that's all lost. Can I ask you this, though? I think just the procedural matter, I think the judge, let's assume that she said enough. The gambling, whatever it is. At least she, it's not like she didn't say anything, okay? So then I think the harder question is, is it enough to justify the number? And I don't, why are we not just deferring to her? I mean, what about the gambling? She was very concerned about the gambling, that it occurred after, you know, this whole sentencing process had started, he was still doing it. I mean, she was very concerned about it. And maybe it tied back to the misdemeanor conviction as well, that there seemed to be maybe a pattern. I mean, why is that not enough? The gambling certainly was the elephant in the room throughout the entire sentencing hearing. The response, again, is related to the fact-driven nature of what that variance has to be. To make it compelling, it has to be fact-driven. Now, generally speaking, gambling is a mitigating factor. In no way was that argued in this case, that gambling was a mitigating factor. I understand that. But now it's been turned into an aggravating factor. And a high level of focus being given to it. When, in reality, it was not a bond condition to not gamble. The state of Ohio has made it legal to do, why he's on bond. Well, the court's answer to that was, you were gambling with money that belonged to the American people. You didn't have a right to go in to gamble with that money. Does that hold any water? I think the facts of the explanation provided by the defense, that this was a lifelong hobby that was not a, I'm going to roll the dice, or I'm going to sit here for hours and make $10 an hour by being so patient. I do believe it does matter here that we're talking about poker. As opposed to a more, where the house odds take from you, and you, over the long run of 25 years, have no expectation of winning money. But that was all explained to the district court, right? I mean, there were arguments about this is not just a table game or whatever. In the briefing, at least, right? How the rake works and how all this stuff works. I mean, she had all the information in front of her, right? And to that I would say that those were non-frivolous explanations that were not ultimately considered during the sentencing. That that was lost upon a frustration, albeit perhaps somewhat justified, of the concept of gambling. There wasn't an actual analysis of whether things should have been different and whether this requires a variance. I have one other question on analysis. What about the family ties consideration, which did not get much response from the court? The argument that in this circumstance, Mr. Favet or Favet needed to be at home because he was the only one who could handle Turner at night. I believe that is another problem, and that would go to procedural reasonableness, of not addressing a non-frivolous argument of family ties. Now, whether a departure was required can be a debatable thing that the court may have discretion on, but in terms of ignoring it and not addressing it, because certainly there could be a situation, if you have a specific discussion of, listen, your family ties may cause you to come down a little bit, but there's other reasons I see for why we should go up, and then we end up in the guidelines, and those type of discussions. But was it presented to the judge? My impression was that it was presented to the judge as a reason for a downward variance. It was. It wasn't presented to her as a reason to not do something else. And I understand that may have been out there, but I don't know that it was. In other words, if it's presented to the judge, and it's a discouraged factor, right? So you're presenting this to her and saying, we should get a downward variance, and she says, no, I'm not going to do that. I mean, and you're saying, and I understand there's a more subtle argument that says, well, if you're considering giving a 12-month upward variance, you should at least consider, at a minimum, our argument for why there was a downward variance and put it into that column, too, right? I think it's implicit in arguing a significant family ties issue of a disabled son and a wife that can't work that you are asking for a lower sentence overall. I think the departure language probably had a lot to do with trying to get into the right zone where probation was possible, which wasn't going to happen in this case, ultimately. But I think that's why it tied to a departure. But, you know, ultimately our argument is not that a departure should have been in this case. The argument is that it should have been a guideline sentence and there wasn't sufficient compelling justification for a variance upward. Thank you. Thank you. May it please the Court, Counsel. Jason White for the United States. The district court here assessed a procedurally and substantively reasonable sentence. The district court provided sufficient basis for the variance and adequately addressed the defendant's arguments. The district court also relied on appropriate 3553 factors, afforded appropriate weight to the factors she'd cited, and the sentence was not arbitrary. As it relates to the procedural... It was a pretty short response on the family ties question, which in this case we know there's evidence in the record that Turner is a child that needs significant care and perhaps care by somebody with strength to aid the child to control himself. Your Honor, the cases of Rita and Gall outline that there's sort of a proportionality in what is required by the court when it's responding to a defendant's argument. More complex arguments that the defendant presents requires a more in-depth response from the court. Here the defendant's argument was mostly provided to the court by way of briefing. And as you look at the record, there wasn't much argued by the defense counsel to the court during the sentencing hearing. The matter was simple. Some of it was tried to be argued, and the opportunity was not extended for further discussion. The court addresses the defendant's argument in one instance during a discussion as it relates to the calculation of the guideline range. And you're right, the court is very quick to say, I'm not persuaded by your argument. She says, I've read the briefs. I'm not persuaded by your argument, but I'll give you an opportunity to make that argument later in your elocution. An invitation that the defense attorney at the sentencing hearing does not accept. He doesn't revisit the issue later on in the argument. The court was unpersuaded at that time, and the issue was never revisited. And so the court has not required sua sponte on its own volition to discuss all of the defendant's requirements. And so I would argue that... I think the law is every non-frivolous argument needs to be addressed. That's right. That's right, Judge. But I would argue that this case here is much like the court's consideration of the defendant's argument in the Vonner case, where the court doesn't completely address the defendant's arguments. Cursory, I suppose. But this court had said that that was sufficient in that Vonner case. That the issue is simple. Here the issue is simple. It's clear that the defendant has family ties. But the court was not persuaded. I would argue that the district court here did adequately address those arguments as briefly as they were brought up by the defense. In addition... Was the wife's sentence relevant to the analysis at all? She got probation, right? I think it is relevant, Your Honor. Is there anything in the record there that one of the reasons she got her sentence was to take care of the family? I don't know the answer to that question. I don't know if that was the consideration. Would it be relevant here if she did say that? I'm just curious. I think it would be relevant here. I think, though, the difference was... And that wasn't brought up by either party, whether or not those concerns were adequately addressed by means of having the wife sentenced. Because the court doesn't really talk about why she wasn't persuaded by the defendant's argument. However, she does give the opportunity to discuss it, something that never happens in this particular case. The court was particularly concerned about this defendant's history and the characteristics and nature of the offense. And she speaks at length and discusses with both counsel this history of lies, this history of deceit. And the government's position is that she does this analysis, both as she's talking about the calculation of the guideline range, also afterwards, to a sufficient degree to cause, under a deferential standard of review, this particular sentence to be procedurally reasonable. When we're talking about substantive reasonableness, I would encourage this court to look at the totality of the circumstances in reviewing the district court sentence. Gall teaches us that we're looking at the forest and not the individual trees. There are a number of trees in this case. There's the defendant's gambling issue. There's the defendant's military record. There's the charity issue. And then there's also... And I would direct this court to review those particular sections of the sentencing hearing where she's specifically talking about the variance. She's particularly struck by this tampering of a witness charge and the obstruction of justice adjustment to the guideline range. She calls it... What we're looking at is... Well, first of all, is it mine run or is it not? But under either... If it's outside the guidelines, the further it's outside the guidelines, the more important it is to explain why. And this is a 12-month variance from the top of a 10-month to a 16-month guideline. So that's a lot heaped on top. So what makes the explanation sufficient, not just to explain, I'm going to vary, but the extent of this variation? Yes. I would first like to point out that Gall teaches us that when we're looking at drawing the link between the justification and the size of the variance, obviously this court knows that we can't be using a mathematical approach. Gall says that the lower the guideline range, necessarily the amount of the variance is going to look more extreme. We have a 75% variance in this case. What's important is that the court was struck by this defendant's history and characteristics and the nature of his offense. And for the court, that was enough to justify that 12-month variance. It was the icing on the cake. The lies and deceit that this defendant exhibited put this case for the district judge outside of that heartland standard. The court noted when it calculated the guideline range, and at the end that the range at the top end was a 16 months, she notes that that wasn't sufficient when she considered the 3553 factors, specifically the history and characteristics of the defendant and the nature and circumstances of the offense.  she needed to manipulate not the guidelines, but she needed to manipulate the sentence sufficiently to address the defendant's conduct. And one of the things judges... Isn't that problematic? She manipulates it by essentially making the 12-month sentence run consecutively instead of concurrently. Essentially what she does is tack it on and says that, right? That's right. The 12 months would essentially be an obstruction of justice or encouraging people to lie for him. But it's baked in. It's already baked in. It's baked into the 10-16. How can she evade the guidelines by making something consecutive that's not supposed to be consecutive? Judge, I don't think that she's evading the guidelines. I think what you're addressing is this concept of double counting where a conduct is already represented within the guideline range and then also conduct is represented in the variance, the justification for the variance. I would argue to this court that this court has previously held that that is permissible when a district court is crediting conduct to a separate offense. And here we're talking about a separate offense. That tampering with a witness is a separate offense to then what the obstruction enhancement under the guidelines was for the Social Security fraud. And I would direct the court to the case of Hidalgo Rivera cited in my brief because there's a discussion there about that double counting and whether or not a court can consider the same conduct in two different ways when it's sentencing. Here the court noted that even with that obstruction of justice adjustment when it calculated the guideline range, the court noted that after all was said and done that 16-month sentence was not sufficient. It was not given the defendant's history. When you're looking at the trees, the forest as opposed to the trees, that 16 months wasn't good enough for the court. And that's why the court justified and how the court justified that 12-month variance on top of the maximum guideline range. But you would say, wouldn't you, that it has to have a different component. A court just can't say I'm giving you two points for obstruction and now that moves you into this guideline. Okay, I've finished discussing that. Now, on the obstruction that you committed, I'm going to pop you up another 12 months. You can't just fully double count. That's not your argument, is it? No, it's not, Your Honor. Because I would find that problematic. So what is it that distinguishes this from Judge Nalbandian's question that it is essentially running consecutively something that was not intended to be run consecutively? Sure. The two-level obstruction of justice calculation when the court is considering the guidelines is directly related to that tampering of a witness. When we move to the court's discussion about the variance, we're talking about the icing on the cake. And she specifically says that that is the icing on the cake when the court is considering all of the other things related to this defendant. In the one hand, when we're considering the calculation of the guidelines, she's focusing in on did the defendant recruit others to lie for him, to perpetrate his Social Security fraud? Then, at the end, when we're talking about the variance, she's saying that this is just another example of all of the lies and deceit that the defendant has exhibited throughout his lifetime. So she's drawing that extra link. So it's not the same thing being applied in two ways. It's more of a specific tree as it relates to calculating the guidelines. But then the broader forest when she's considering upward varying from the sentence that the guidelines she's already determined to be insufficient when presented with the conduct and history of this particular case. I'd like to discuss before I close a little bit about the gambling issue. So the defendant argues that the court placed too much emphasis on the gambling issue. What I really argue is that the court and the government misunderstood the documents. The documents there had to do with the way the casino makes its money, not with how individuals make money or not. His point being, I like to play poker, I know how to play, I do it as a hobby, and no, I have not lost the government's money. I have actually won money across time and I can show that to you. So the court looks at the gambling issue really in two different time periods. So the court looks at the gambling issue during the offense conduct for a period, and then the court also looks at the gambling after the plea of guilty was entered. Now there was a lot of discussion in the record about whether or not the defendant lost money by gambling. But ultimately, the court says, it doesn't matter whether you lost or won money. And in fact, she readily admits that she doesn't know whether or not he lost money based on the evidence presented by both sides. However, she says it doesn't matter. The problem is that you were gambling. That you had taken money from the United States and that you were gambling that money. You were putting that money at risk, that money that you knew from the time of the plea onward that you needed to pay back to the United States. And that's what the court took issue with. The defense never raised at the sentencing hearing this concept or this argument that gambling is a mitigating issue. However, on the appeal, the appellant argues that the court should have considered that as a mitigating issue. The court didn't. The court just argued that where we have considered gambling in the past, we have considered it in mitigation. And that it's an unusual term for the court to use it as a sword instead of a shield. The government's contention as it relates to the gambling issue is that the court assessed a reasonable amount of weight when it considered the 3553 factors and that it was not impermissible and did not result in an unreasonable sentence for the court to consider that. It was fair game. And the court adequately and sufficiently and appropriately considered that as part of the many issues that was presented to the court in considering that particular defendant and that particular crime and making that ultimate determination as to what is an appropriate sentence here. The United States contends that the sentence was reasonable here, both procedurally and reasonably and we would ask you to affirm the sentence. But the government asked for 60 months, right? I think, Your Honor, there is a mention of that in the record. I think that was a misstatement by the court. The government was not advocating for a 60 month sentence. The government was advocating for a sentence, I think it was no more than 27 months, based on the government's recommendation of the guidelines calculation. But that wasn't an upward variance that the government was asking for? No. It was just adding in the obstruction and everything that the government thought should be in the guidelines calculation. That was the top of whatever that range was going to be? Let me be clear first. The government did ask for a variance. It also asked for a particular guideline calculation. The government specifically said, if, Your Honor, you don't agree with our guideline calculation, we would ask for a variance up to the maximum of what we are requesting as a guidelines calculation. The 60 months, I don't know where that came from. I think that was the court's misspeaking because in the briefing and also if you review the record as far as the sentencing hearing, the government never recommends more than, I think it was, 27 months. If there are no further questions, thank you. Counsel, how long has your client been in prison now? I believe, I don't know the answer to that question. Months or so? Yes. I think that it's been a while since he went into custody the day of the sentencing hearing. If we agreed with you, would we not send the case back to the district judge either to supplement the record or to change her sentence? That's right. It would be a matter of, depending on how this court ruled. That would take several months. I would anticipate a motion to expedite that based on if the goal is because the argument upon remand is certainly going to be a request for a guideline sentence between 10 to 16 months, probably about 16 months if I had to guess. So yes, but I do think that it would not end up being moot. I think that he could be sentenced to 16 months and save himself a year based on this argument and that's a year with his disabled child is why this issue is being pressed as an appeal. I think ultimately the variance, this upward variance that's significant as Judge Stranch has said it has to be discussed carefully and it should connect to stated goals. Why is there a need to be this variance? Why does the guidelines have to be manipulated? And if there are other factors, if deterrence is generally discussed why did he need an extra 12 months for deterrence? Why did he need an extra 12 months for obstruction when it's already in the guidelines? If he does have some limited examples of conduct unbecoming of when he was in the military why does that require a 12 month variance? What about the gambling after the guilty plea knowing you were going to have to pay the money back? Why would you risk either your money or the government's money knowing, I mean it's gambling it's still risky behavior you're going to have to pay the money back, you agreed to do it. I think the heart of that is the nature of the risk of what this particular man was doing playing poker. I certainly do not suggest that when you play poker you have no risk. I just submit that it's a less risk for someone who has done it for decades who, there is But does he have to violate a court order? Didn't the court tell him after sentencing not to gamble anymore? That's a key here is that he did not violate a court order. The court made clear the bond conditions are in the record he was not told not to gamble. After sentencing, upon supervised release it is a condition of his supervised release that he is to not gamble. Did he consistently make money gambling? Over the period of records he submitted Were there tax records? Did he always claim it as income? That I don't have an answer to. Are there tax records in the record? As far as I'm aware, there are not tax records in the record. The numbers that were submitted did not suggest a significant win or loss, quite frankly in the poker. But it would have been a reportable income if he won. It would have been if he would have won. Likewise, I know you can report losses or you used to be able to before tax relief. But yeah, I think the it's a hobby is the point. When I read this case His argument was it's a hobby related to getting my older son a job. Yes, and it's a hobby I'll just leave on this. I know it's anecdotal but my friend's dad passed away recently of cancer and when I talked to him, I grew up with him he was at the Jack Casino playing poker every single day as he was dying and he said when I'm there I'm just a guy at the poker table and it didn't matter if he was going to win or lose. And so I think that sentiment is what they were trying to present to the court on the gambling, that it was not a reckless behavior and give him a condition and he'll certainly comply with it. Counselor, we see that you were appointed under the CJA Act and we appreciate your service your good briefing and your argument it adds to the justice possibilities in our system. Thank you. Thank you both for your arguments and your briefing they will be taken under advisement and an opinion will be rendered in due course. All of our remaining cases today are not on the argument document